UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CESAR A. RODRIGUEZ,<br><br>    Plaintiff,<br><br>    v.<br><br>PETE LABAHN,<br><br>    Defendant. | Case No. 19-cv-01273-YGR (PR)<br><br>**ORDER GRANTING DEFENDANT LABAHN'S MOTION FOR SUMMARY JUDGMENT** |

## I.     INTRODUCTION

Plaintiff Cesar A. Rodriguez, a former state prisoner who was previously incarcerated at the Correctional Training Facility ("CTF"), brings the instant *pro se* civil rights action, pursuant to 42 U.S.C. § 1983, alleging constitutional violations stemming from when he was denied parole at his seventh subsequent parole consideration hearing before the California Board of Parole Hearings ("BPH" or "Board") on June 13, 2017.  Plaintiff seeks monetary damages.

In an Order dated October 11, 2019, the Court found that Plaintiff's complaint stated cognizable due process claim against BPH Commissioner Pete Labahn and BPH Deputy Commissioner James Martin for "'ignor[ing] their established procedures and statutes' as required by state law, thereby violating [Plaintiff's] rights to due process by 'depriving him of an actual length of incarceration that matches his culpability, reformation, and offense . . . .'" Dkt. 9 at 2 (citing Dkt. 1 at 3).  The Court dismissed all claims against Defendant CTF Warden Craig Koenig because Plaintiff did not allege that this Defendant actually or proximately caused the deprivation of any federally protected right and also because no respondeat superior liability exists under Section 1983.  *Id.* (citing *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).  Finally, the Doe Defendants Plaintiff identified as "'Doe's' Board members and California courts" were dismissed from this action without prejudice.  *Id.* (citing *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980)).  Plaintiff was advised that should he learn these Doe Defendants' identities through discovery, he may move to file an amended

1    complaint to add them as named defendants.  *Id.* at 3 (citing *Brass v. County of Los Angeles*, 328

2    F.3d 1192, 1195-98 (9th Cir. 2003).  To date, Plaintiff has not done so.

3            In an Order dated January 3, 2020, the Court informed Plaintiff that service had been

4    ineffective on Defendant Martin and directed Plaintiff to provide the Court with the current

5    address of this Defendant within twenty-eight days.  Dkt. 16.

6            In an Order dated March 3, 2020, the Court confirmed that this action had been pending

7    for over 120 days and service upon Defendant Martin had not been effectuated.  Dkt. 17 at 2.  The

8    Court further noted that Plaintiff had failed to provide the current address of this Defendant and

9    the time frame for doing so had passed.  *Id.*  Therefore, all claims against Defendant Martin were

10   dismissed without prejudice under Federal Rule of Civil Procedure 4(m).  *Id.* at 1-2 (citing *Walker*

11   *v. Sumner*, 14 F.3d 1415, 1421-22 (9th Cir. 1994) (prisoner failed to show cause why complaint

12   against prison official should not be dismissed under Rule 4(m) because prisoner did not prove

13   that he provided Marshal with sufficient information to serve official or that he requested that

14   official be served), *overruled on other grounds by Sandin v. Conner*, 515 U.S. 472, 487 (1995)).

15           The parties are presently before the Court on the motion for summary judgment filed by

16   Defendant Labahn (hereinafter "Defendant"), the only remaining Defendant in this action.  Dkts.

17   18, 18-1.  Defendant contends that Plaintiff's aforementioned due process claim is barred as a

18   result of prior state court judgments entered in actions arising from the same incident in this

19   federal action.  In the alternative, Defendant moves for summary judgment on the ground that the

20   undisputed evidence indicates that Defendant did not violate Plaintiff's due process rights, and

21   that Defendant is entitled to qualified immunity.  Even though Plaintiff was given the opportunity

22   to do so, he has not filed an opposition, and the time for doing so has passed.

23           Having read and considered the papers submitted in connection with this matter, the Court

24   GRANTS Defendant's motion for summary judgment and his request for judicial notice ("RJN").

25   **II.    DEFENDANT'S REQUEST FOR JUDICIAL NOTICE**

26           Defendant requests that this Court take judicial notice of certain state court documents

27   (filed in Plaintiff's underlying criminal case and state habeas actions) under Federal Rule of

28   Evidence 201, in support of Defendant's motion for summary judgment.  Dkt. 18-1; RJN, Exs. A-

D. Plaintiff has not objected to Defendant's RJN, and the Court finds the documents to be matters of public record properly subject to judicial notice. The Court may take judicial notice of Plaintiff's state court documents filed in his underlying criminal case and state habeas actions, *see* RJN, Exs. A-D, because "a court may take judicial notice of its own records in other cases, as well as the records of an inferior court in other cases." *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980). Accordingly, Defendant's unopposed RJN is GRANTED. Dkt. 18-1.

### III. DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

#### A. Background

##### 1. Allegations in the Complaint

On November 24, 1981, Plaintiff stabbed the victim, Lynn Fuller, who was a bartender at a bar he frequented, with a knife two to three times, and one of the wounds penetrated the victim's heart and caused near instantaneous death. Dkt. 1-1 at 79, 221. Plaintiff entered the California Department of Corrections and Rehabilitation ("CDCR") on June 3, 1982. Dkt. 1 at 3.

Plaintiff went through a reformation process while incarcerated. Dkt. 1-1 at 80-83. During his incarceration, he received rules violation reports and counseling chronos (an institutional record) for various offenses, including possession of an inmate manufactured stabbing instrument, unexcused work absences, failure to carry out work duties, stealing food, and failure to follow orders. *Id.* at 80-81. Beginning in 1995, Plaintiff also began participating in vocational courses, adult education programs, self-help programs, and worked as a porter and in the kitchen. *Id.* at 80-82. He additionally received laudatory chronos commending him for his work, attitude, and participation in various programs. *Id.* at 82-83.

Plaintiff's primary term in accordance with the sentencing matrix was twenty years in state prison, but he was scheduled to be released from the CDCR in April 2019, seventeen years past his primary term.[1] Dkt. 1 at 3-4. Thus, Plaintiff points out that the Indeterminate Sentencing Law ("ISL") gave him "a federally protected right to an actual length of incarceration" that "matches

---

[1] The record shows that Plaintiff submitted a notice of change of address dated April 24, 2019, which indicated that he no longer was incarcerated at CTF. Dkt. 5. Therefore, the Court assumes Plaintiff was released from the CDCR as of April 24, 2019.

his culpability and reformation, as set out in the matrix, and not the crime . . . ." Dkt. 1-1 at 3, 7, 44. However, Plaintiff alleges that Defendant deprived him of such a sentence by refusing to set a uniform term under the ISL and by denying Plaintiff parole at his hearing on June 13, 2017. *See id.*; *see also id.* at 260.

### 2. Plaintiff's Sentencing

#### a. The ISL and the Determinate Sentencing Law ("DSL")

An inmate who committed a felony before July 1, 1977 was sentenced under the ISL. *Guzman v. Morris*, 644 F.2d 1295, 1296 (9th Cir. 1981). Under the ISL, state courts sentenced criminal defendants within a range of time as allowed by law, but the former California Adult Authority determined the time such defendants would actually serve. *Id*. The DSL, which was intended to achieve uniformity in sentencing, replaced the ISL, previously codified in section 1168 of the California Penal Code on July 1, 1977. *Id.*; Cal. Penal Code, § 1170. The DSL mandates that criminal defendants receive a sentence provided by law, subject to certain aggravating, mitigating, or enhancing circumstances. *Id.*

#### b. Plaintiff's Sentence

On January 27, 1982, Plaintiff pleaded guilty to Second Degree Murder in San Diego County Superior Court. Dkt. 1-1 at 194:9-11; RJN, Ex. A. On February 24, 1982, the trial court sentenced Plaintiff to fifteen years to life in state prison. RJN, Ex. B.

### 3. Plaintiff's June 13, 2017 Parole Suitability Hearing

On June 13, 2017, Plaintiff appeared before the Board at a parole consideration hearing held at CTF. Dkt. 1-1 at 192-269. Defendant presided over this hearing as Board Commissioner. *Id.*

Spanish interpreter Albert Sousa and Plaintiff's attorney, Candice Christensen, were present and assisted Plaintiff at this hearing. *Id.* at 192. Plaintiff testified that he experienced abuse from his mother, leading him to leave home at age eleven. *Id.* at 207:23-25, 208:1-5. Plaintiff also testified that he suffered more abuse than his ten other siblings because he was "the black sheep of the family" and "always mischievous." *Id.* at 208:2-21; 209:1-9. When Defendant asked Plaintiff why he had killed the victim, Plaintiff responded that he had been abused as a

4

child, and "all the courage [he] was building inside" "by the time she said something to [him] . . . all the things [he] had inside of [him] [was] blow [sic] away." *Id.* at 221:19-25, 222:1-10. When Defendant pressed Plaintiff for more details, Plaintiff stated he "d[id]n't recall exactly what happened," but that he "probably did something to her" which led her to call his mother a whore. *Id.* at 222:11-20. Plaintiff admitted to having consumed alcohol on the night of the murder and being under the influence and that the alcohol had affected his behavior. *Id.* at 226:15-24, 227:4-8. But when Defendant questioned Plaintiff as to how intoxication changed his behavior and thinking, Defendant commented that Plaintiff's initial responses were "certainly not direct." *Id.* at 227:16-24. When Defendant asked Plaintiff how intoxication affected "[his] decision making and [his] actions," Plaintiff responded that "when one drinks . . . one commits . . . things that . . . are not in good judgment." *Id.* at 228:8-13.

        Attorney Christensen argued on Plaintiff's behalf that Plaintiff was ready to be paroled because of the following: his youth at the time of the offense (i.e., 21 years old), his growth and maturity over the last 31 years, his limited education when he was first incarcerated, the job skills he had attained while imprisoned, his lack of criminal history before his commitment offense, his control over his impulses, a psychologist's conclusion that he presented an overall low risk of violence, his participation in programming, his multiple letters of support, his plans to work for his family farm in Honduras upon release, and his abstinence from alcohol. *Id.* at 253:21-25, 254:1-25, 255:5-12, 15-25, 256:2-12.

        Defendant denied Plaintiff parole for three years. *Id.* at 260:7-13. Defendant presented the statement of reasoning for the three-year denial. *Id.* at 260-266. Defendant stated that the Board believed that Plaintiff "pose[d] a present risk of danger to society and a threat to public safety if released from prison and [was], therefor, not suitable for parole or release." *Id.* at 260:7-10. Defendant acknowledged the positive factors favoring parole, namely that Plaintiff: did not have any "history of violent crime prior to this murder [at issue]"; was 57 years old, an age that "suggest[ed] a statistically reduced risk of violent recidivism"; had been involved in programming in an "increasingly positive fashion" since his 2010 hearing; had articulated reasonable plans for release in Honduras; and had not had any serious rules violation reports for eight years. *Id.* at

5

260:13-24, 261:1.  At the same time, Defendant noted, Plaintiff declined to provide satisfactory responses to questions about the commitment offense despite his apparent ability to do so.  *Id.* at 261:17-24, 262:1, 263:9-12.  Specifically, Plaintiff was unable to verbalize the rationale for his actions toward the victim and to explain what transpired specifically between them that "apparently triggered some anger in him, such uncharacteristic anger it would seem, given his history." *Id.* at 262:1-23, 263:6-9.  Defendant believed that "additional progress [was] needed before [Plaintiff] can be deemed suitable for parole in a relatively narrow area." *Id.* at 262:23-24, 263:1-2.  First, Defendant encouraged Plaintiff to remember "the trigger of his anger, specifically in terms of his interaction with [the victim]," and voiced his concern that when Plaintiff was released, he would be unable to handle situations in which others were discourteous to him and drove him to anger.  *Id.* at 263:12-19.  Second, while Defendant acknowledged that Plaintiff "ha[d] programmed in an increasingly positive fashion since the last hearing," particularly in the area of substance abuse, Defendant stressed that it would be "reasonable to expect [Plaintiff] to be able to identify, with specificity, triggering events, circumstances and emotions that could lead him to feel like drinking alcohol in a free society." *Id.* at 263:3-4; 264:8-13.

### 4. Plaintiff's State Habeas Actions

#### a. Filed in the San Diego County Superior Court

Plaintiff had filed three prior state habeas petitions in the San Diego County Superior Court, and each of them were denied.  Dkt. 1-1 at 312.  On April 5, 2018, Plaintiff filed a fourth state superior court habeas petition, case number HC 18436.  RJN, Ex. C.  Plaintiff named CTF Warden S. Hatton as the respondent in that petition.  *Id*.  Plaintiff contested the denial of parole at the aforementioned June 13, 2017 parole suitability hearing, claiming that the evidence did not support the Board's decision and that the Board's refusal to set uniform terms under the ISL as it existed in 1976 deprived him of fundamental fairness by failing to impose a sentence commensurate with his culpability and reformation and not the crime.  *Id.*

On June 28, 2018, the state superior court denied Plaintiff's fourth petition.  Dkt. 1-1 at 313-14.  The Court rejected Plaintiff's reliance on prior decisions from the Board and California courts, as they pertained to other individuals.  *Id.* at 314.  It noted that the present state of the law

6

as it was controlling and that Plaintiff's dissatisfaction with the current law was insufficient to challenge the Board's three-year parole denial. *Id*. The Court found that Plaintiff had not stated a prima facie case for relief because "[his] claim of fundamental unfairness arises out of what he believes the law should be, rather than what it is." *Id.*

### b. Filed in the California Court of Appeal

On July 13, 2018, Plaintiff filed a state habeas petition, case number D074302, in the California Court of Appeal. RJN, Ex. D. Again, Plaintiff named Warden Hatton. *Id*. Plaintiff repeated the exact same arguments in the petition he had submitted to the San Diego County Superior Court. *Id.*, Ex. D at 3-57

On July 26, 2018, the state appellate court denied this petition. Dkt. 1-1 at 317-19. It stated that the Board "expressly referenced the regulatory factors that it was required to consider to determine whether [Plaintiff] was suitable for parole." *Id.* at 318. The state appellate court acknowledged that the Board had found "'some positives' tending to show that [Plaintiff] was suitable for parole," including Plaintiff's age at the time of the hearing (57 years old), youth at the time of the offense, lack of violent criminal history before his commitment offense, lack of disciplinary infractions during his last several years in prison, participation in programming, and reasonable parole plans to return to Honduras and work on a family farm. *Id*. The court also noted that Plaintiff's comprehensive risk assessment prepared by the forensic psychologist who interviewed him was generally positive and found that he presented a "non-elevated risk [for violence] relative to other parolees." *Id*. However, the court stated that the Board found these factors were outweighed by Plaintiff's inability to verbalize his rationale for the crime and to articulate what led to his actions, and one of the Board members believed Plaintiff was lying about what, if anything, he recalled about the murder. *Id.* at 318-19. The court concluded that because "the Board considered the relevant factors, and a modicum of evidence support[ed] its conclusion that [Plaintiff] [was] not suitable for parole." *Id.* at 319.

### c. Filed in the California Supreme Court

On August 9, 2018, Plaintiff filed a state habeas petition, case number S250540, in the California Supreme Court. Dkt. 1-1 at 42-100, 102-190. Again, Plaintiff named Warden Hatton.

7

*Id.* Plaintiff repeated the exact same arguments in the state habeas petitions he had submitted to the lower courts. *Id.*

According to the California Supreme Court's official website, Plaintiff's state habeas petition filed on August 9, 2018 in the California Supreme Court was summarily denied on May 15, 2019. *See Rodriguez (Cesar A.) On H.C.,* Cal. S. Ct. No. S250540.

### B. Legal Standard

Federal Rule of Civil Procedure 56 provides that a party may move for summary judgment on some or all of the claims or defenses presented in an action. Fed. R. Civ. P. 56(a)(1). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.*; *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring citation to "particular parts of materials in the record"). If the moving party meets this initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *See Celotex*, 477 U.S. at 324; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

Claim preclusion may be raised in a motion for summary judgment. *Cf. Holcombe v. Hosmer*, 477 F.3d 1094, 1097 (9th Cir. 2007) (finding that claim preclusion may be presented in a Rule 12(b)(6) motion to dismiss). In the preclusion context, a federal court may take judicial notice of the record in the earlier proceeding. *Manufactured Home Cmtys. Inc. v. City of San Jose*, 420 F.3d 1022, 1037 (9th Cir. 2005). Judicial notice is properly taken of public records, such as transcripts, orders, and decisions made by other courts or administrative agencies. *See Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003) ("[m]aterials from a proceeding in another tribunal are appropriate for judicial notice"), *overruled in part on other grounds*, *Hayward v. Marshall*, 603 F.3d 546, 555 (9th Cir. 2010) (en banc). Here, as explained above, the Court takes judicial notice of the state court records relating to Plaintiff's prior state habeas proceedings.

### C. Analysis of Summary Judgment Based on Claim Preclusion and Collateral Estoppel

Under the doctrine claim preclusion (previously referred to as res judicata), "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* These doctrines bar not only every claim that has been raised and decided, but also the assertion of any legal theory or ground for recovery that might have been raised in the first action. *McClain v. Apodaca*, 793 F.2d 1031, 1033 (9th Cir. 1986).

When the effect of a state court judgment is at issue, federal courts must apply the law of the forum state to determine the preclusive effect of the judgment. *Migra v. Warren City Sch. Dist. Bd. of Ed.*, 465 U.S. 75, 84 (1984). California law provides that a final judgment in state court "precludes further proceedings if they are based on the same cause of action." *Brodheim v. Cry*, 584 F.3d 1262, 1268 (9th Cir. 2009) (internal quotations and citation omitted).

Reasoned denials of California habeas petitions have claim or issue preclusive effect on subsequent section 1983 actions. *See Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1231 (9th Cir. 2014) (claim preclusive effect); *Silverton v. Dep't of Treasury*, 644 F.2d 1341, 1347 (9th Cir. 1981) (issue preclusive effect). And a state habeas proceeding may preclude an identical issue from being relitigated in a subsequent section 1983 action if the state habeas court afforded a full and fair opportunity for the issue to be heard and determined under federal standards. *See Silverton*, 644 F.2d at 1346-47.

#### 1. Claim Preclusion

For claim preclusion to apply, "three requirements have to be met: (1) the second lawsuit must involve the same 'cause of action' as the first one, (2) there must have been a final judgment on the merits in the first lawsuit and (3) the party to be precluded must itself have been a party, or in privity with a party, to that first lawsuit." *San Diego Police Officers' Ass'n v. San Diego City Employees' Retirement Sys.*, 568 F.3d 725, 734 (9th Cir. 2009). A "cause of action" is determined

by analyzing the "primary right" at stake. *Id.* The same primary right is at issue where the two actions involve the same injury to the plaintiff and the same wrong by the defendant. *Id.*

Applying the foregoing test in relation to Plaintiff's prior state court actions, the Court finds that the three requirements for claim preclusion are satisfied in this case. As an initial matter, the instant federal action and Plaintiff's prior state habeas actions involve the same harm and wrong by Defendant. Specifically, Plaintiff contests the denial of parole during his June 13, 2017 parole suitability hearing, and claims that he was deprived of a federally protected right to an actual length of incarceration matching his culpability and reformation because of the Board's failure to set uniform terms under the ISL. *Compare* RJN, Exs. C&D and Dkt. 1-1 at 42-100, 102-190 *with* Dkt. 1 at 3 and Dkt. 1-1 at 2-41. Therefore, the instant case involves the same controversy that the San Diego County Superior Court, the California Court of Appeal, and the California Supreme Court have already decided. Even if the legal theories presented and remedies sought in the state court proceedings may differ from those presented in this action, the fact remains that his present and prior proceedings arise from the same conduct and involve the same injury to Plaintiff and the same wrong by Defendant. *See Eichman v. Fotomat Corp.*, 147 Cal. App. 3d 1170, 1174 (1983) ("[I]f two actions involve the same injury to the plaintiff and the same wrong by the defendant then the same primary right is at stake even if in the second suit the plaintiff pleads different theories of recovery, seeks different forms of relief and/or adds new facts supporting recovery."); *see also San Diego Police Officer's Ass'n*, 568 F.3d at 734 ("What is critical to the analysis 'is the harm suffered . . .'").

The remaining requirements for claim preclusion are also satisfied. Plaintiff does not dispute that there was a final judgment on the merits rendered in the prior state habeas proceedings. As noted, the state superior and appellate courts denied Plaintiff's state habeas petitions in orders explaining those courts' findings and reasoning. *See* Dkt. 1-1 at 312-314, 317-319. Specifically, the state superior court found that Plaintiff had not stated a prima facie case for relief because "[his] claim of fundamental unfairness arises out of what he believes the law should be, rather than what it is." *Id.* at 314. And the state appellate court concluded that because "the Board considered the relevant factors, and a modicum of evidence support[ed] its conclusion that

10

1   [Plaintiff] [was] not suitable for parole." *Id.* at 319.  The state supreme court's summary denial of

2   Plaintiff's habeas petition also constitutes a judgment on the merits.  *See Silverton*, 644 F.2d at

3   1346.

4         Finally, the privity requirement is satisfied, as Plaintiff brought each of the prior state

5   habeas actions.  *See San Diego Police Officers' Ass'n*, 568 F.3d at 734.  Plaintiff was the same

6   party in the state habeas actions, and Defendant is in privity with Respondents in those actions.

7   Plaintiff named Warden S. Hatton in the state habeas actions, and he named Defendant is his

8   complaint.  *See* Dkt. 1 at 1; RJN, Exs. C, D.  Privity exists when a person is so identified in

9   interest with another that he represents the same legal right.  *See Trujillo v. Santa Clara County*,

10  775 F.2d 1359, 1367 (9th Cir. 1985).  For example, privity exists "between officers of the same

11  government so that a judgment in a suit between a party and a representative of the [government]

12  is res judicata in relitigation of the same issue between that party and another officer of the

13  government."  *See Church of New Song v. Establishment of Religion on Taxpayers' Money*, 620

14  F.2d 648, 654 (7th Cir. 1980), *cert. denied*, 450 U.S. 929 (1981) (citation omitted) (prison

15  employees at federal prison in Texas in privity with prison employees at federal prison in Illinois

16  as both suits against employees of Federal Bureau of Prisons) (quoting *Sunshine Coal Co. v.

17  Adkins*, 310 U.S. 381, 402-03 (1940)).  Such is the case here, where Defendant in the instant

18  action is in privity with Respondents in Plaintiff's state habeas actions because all the suits are

19  against CDCR employees.

20        Therefore, the three requirements for claim preclusion based on Plaintiff's prior state

21  habeas proceedings are satisfied in this action.  Thus, upon considering such state habeas

22  proceedings, the Court finds that Defendant is entitled to summary judgment on the basis of claim

23  preclusion.

24        **2. Collateral Estoppel**

25        Collateral estoppel, or issue preclusion, only bars the relitigation of issues explicitly

26  litigated and necessary to the judgment.  *See Hiser v. Franklin*, 94 F.3d 1287, 1292 (9th Cir.

27  1996).  To foreclose relitigation of an issue under federal law: (1) the issue at stake must be

28  identical to the one alleged in the prior litigation; (2) the issue must have been actually litigated by

the party against whom preclusion is asserted; and (3) the determination of the issue in the prior litigation must have been a critical and necessary part of the judgment in the earlier action. *Gospel Missions of Am. v. City of Los Angeles*, 328 F.3d 548, 553-54 (9th Cir.), *cert. denied*, 540 U.S. 948 (2003) (no issue preclusion where plaintiff's standing to challenge ordinance provisions was not actually litigated in prior action).

As discussed above, Plaintiff's cause of action in his state proceedings—relating to the alleged due process violation stemming from the denial of parole at the aforementioned June 13, 2017 parole suitability hearing—was fully litigated. Furthermore, this claim was actually litigated as the state courts considered briefs and exhibits submitted by Plaintiff in support of his state habeas petitions. Finally, the issue of whether Plaintiff's due process rights were violated was at the heart of his state habeas petitions, and was a "critical and necessary part of the judgment." *Gospel Missions*, 328 F.3d at 553-54. As mentioned, Plaintiff alleged that he was denied parole on June 13, 2017 and that the Board ignored the ISL and thereby deprived him of a federally protected right to a sentence commensurate with his culpability and reformation. *See* Dkt. 1 at 3; RJN, Exs. C, D; Dkt. 1-1 at 42-100, 102-190. His state habeas petitions and the instant complaint present the issue of whether Plaintiff was denied due process when he was allegedly denied a term of incarceration matching his culpability and reformation. *Id.* This issue was actually litigated before the San Diego County Superior Court and the California Court of Appeal, which considered Plaintiff's petitions and denied relief in reasoned decisions. Dkt. 1-1 at 313-14, 317-19. The California Supreme Court necessarily denied Plaintiff's due-process issue when it summarily denied his habeas petition, thereby determining that Plaintiff had not suffered any violation of his due-process rights in connection with the denial of parole on June 13, 2017. *See Rodriguez (Cesar A.) On H.C.,* Cal. S. Ct. No. S250540. As mentioned, such a decision by the state supreme court also constitutes a judgment on the merits. *See Silverton*, 644 F.2d at 1346-47. Lastly, Plaintiff was the same party in the state habeas petitions and in the instant action against whom preclusion is being sought.

Based on the above discussion, Plaintiff's due process claim is also barred under collateral estoppel, and Defendant is entitled to summary judgment on the basis of issue preclusion.

### 3. Summary

Accordingly, based on the above discussion, the issues raised in the instant complaint regarding Plaintiff's due process claim are barred under claim preclusion and collateral estoppel, and therefore, must be DISMISSED for failure to state a claim. The Court GRANTS Defendant's motion for summary judgment as to the due process claim on the ground that it is barred by claim preclusion and collateral estoppel. Dkt. 18. Because the Court grants summary judgment on these grounds, it need not address Defendant's remaining alternative arguments.

## IV. CONCLUSION

For the foregoing reasons, the Court orders as follows:

1. Defendant's unopposed request for judicial notice is GRANTED. Dkt. 18-1.

2. Defendant's motion for summary judgment is GRANTED as to Plaintiff's due process claim on the ground that it is barred by claim preclusion and collateral estoppel. Dkt. 18. The complaint is thereby DISMISSED for failure to state a claim.

3. The Clerk of the Court shall terminate all pending motions and close the file.

4. This Order terminates Docket Nos. 18 and 18-1.

IT IS SO ORDERED.

Dated: December 31, 2020

_____
JUDGE YVONNE GONZALEZ ROGERS
United States District Judge